**Electronically Filed
Intermediate Court of Appeals
29824
22-FEB-2013
08:47 AM**

NOS. 29824 and 29825

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

NO. 29824
JOHN PICARDY and ELLEN PICARDY, Plaintiffs-Appellants,
v.
SKY RIVER MANAGEMENT, LLC; PIERRE and
PAMELA OMIDYAR; ELAHE MIR DJALALI OMIDYAR; ANNA CHRISTIAN;
KEVIN MAHONEY; DOUGLAS COOMBS, Defendants-Appellees,

and

JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10,
Defendants
(CIVIL NO. 09-1-0290)

and

NO. 29825
ERIN PICARDY, Plaintiff-Appellant,
v.
SKY RIVER MANAGEMENT, LLC; PIERRE and
PAMELA OMIDYAR; ELAHE MIR DJALALI OMIDYAR; ANNA CHRISTIAN;
KEVIN MAHONEY, Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10,
Defendants
(CIVIL NO. 09-1-0330)


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT


SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, and Fujise and Reifurth, JJ.)

In Appeal No. 29824, Plaintiffs-Appellants John Picardy
(Mr. Picardy) and Ellen Picardy (Mrs. Picardy) filed a complaint

in Civil No. 09-1-0290 against Defendants-Appellees Sky River Management, LLC (SRM), Pierre and Pamela Omidyar, Elahe Mir Djalali Omidyar, Anna Christian, and Kevin Mahoney (collectively, "Defendants"). Defendants filed a "Motion to Stay Proceedings and Compel Arbitration."[1] The Circuit Court of the First Circuit (Circuit Court) granted the motion and filed an "Order Granting Defendants' Motion to Stay Proceedings and Compel Arbitration" (Order Staying Proceedings and Compelling Arbitration).[2] Mr. and Mrs. Picardy appeal from this order in Appeal No. 29824.

In Appeal No. 29825, Plaintiff-Appellant Erin Picardy (Erin), the daughter of Mr. and Mrs. Picardy, in a separate proceeding, filed a complaint in Civil No. 09-1-0330 against Defendants. Defendants filed a "Motion to Stay Proceedings." The Circuit Court granted the motion and filed an "Order Granting Defendants' Motion to Stay Proceedings" (Order Staying Proceedings).[3] Erin appeals from this order in Appeal No. 29825.

In Appeal No. 29824, Mr. and Mrs. Picardy argue that the Circuit Court erred in granting Defendants' Motion to Stay Proceedings and Compel Arbitration because: (1) the Arbitration Agreement is unconscionable; (2) the Arbitration Agreement violates public policy; (3) the Arbitration Agreement does not encompass Mr. Picardy's claim of fraudulent inducement; and (4) Mr. Picardy was induced to sign the Arbitration Agreement by fraud. In Appeal No. 29825, Erin argues that the Circuit Court erred in granting Defendants' Motion to Stay Proceedings because her claims were not derivative of the claims of her father. We affirm the Circuit Court's Order Staying Proceedings and

---

[1] After Defendants filed their Motion to Stay Proceedings and Compel Arbitration, Mr. and Mrs. Picardy filed a first amended complaint which added Douglas Coombs as a defendant.

[2] The Honorable Victoria S. Marks presided.

[3] The Honorable Sabrina S. McKenna presided.

Compelling Arbitration in Civil No. 09-1-0290 and its Order Staying Proceedings in Civil No. 09-1-0330.[4]

I.

SRM provides aviation support, security services, property management, and administrative services for the Omidyar family. SRM's headquarters and administrative offices, and the majority of its approximately sixty employees, including Defendant Anna Christian (Christian) and Defendant Douglas Coombs (Coombs),[5] are based in Nevada.

At the time Mr. Picardy applied for employment with SRM, he was a Special Agent with the Diplomatic Security Service for the United States Department of State (State Department) and was stationed at the American Embassy in Canberra, Australia. Mr. Picardy had been a Special Agent for the State Department since 1987 and had performed classified duties, including protective security, security operations management, criminal and administrative investigations, and terrorist threat and risk analysis.

Mr. Picardy was informed of a job opening at SRM for the position of Assistant Director of Security (Hawaii), which was based in Honolulu. Mr. Picardy applied for the position, and was flown to Nevada for interviews with SRM. Although SRM originally quoted Mr. Picardy an annual salary of $140,000 for the position, he was able to negotiate a higher salary of $180,000. SRM offered Mr. Picardy the position, which it stated was an "at-will" position, meaning that either SRM or Mr. Picardy could terminate the employment at any time, with or without advance notice. SRM's offer was also conditioned on Mr. Picardy signing an Arbitration Agreement, which provided in relevant part

---

[4] After briefing was completed, we ordered Appeal Nos. 29824 and 29825 consolidated under Appeal No. 29825.

[5] In their first amended complaint, Mr. and Mrs. Picardy alleged on information and belief that Christian and Coombs were residents of the State of Nevada. Defendants also represented in the Circuit Court that Christian and Coombs resided in Nevada.

that SRM and Mr. Picardy agreed "to arbitrate any dispute, demand, claim, or controversy . . . they may have against each other . . . which arises from the employment relationship between [Mr. Picardy] and [SRM] or the termination thereof."

Mr. Picardy accepted SRM's offer of employment and signed the Arbitration Agreement. Mr. Picardy took early retirement from his federal employment and relocated with Mrs. Picardy and Erin to Honolulu. Four days after Mr. Picardy began work, SRM terminated his employment based on Mr. Picardy allegedly making inappropriate remarks of a sexual nature to other SRM employees.

Mr. and Mrs. Picardy filed suit asserting claims for wrongful discharge in violation of public policy, fraudulent inducement, and intentional infliction of emotional distress (IIED). Erin filed suit in a separate action asserting claims for fraud and intentional misrepresentation and IIED. In the action brought by Mr. and Mrs. Picardy, Defendants moved to stay the proceedings and compel arbitration. The Circuit Court orally granted the motion on March 18, 2009, and later issued its Order Staying Proceedings and Compelling Arbitration on April 14, 2009. The Circuit Court compelled Mr. Picardy to submit all his claims to arbitration pursuant to the Arbitration Agreement, and it stayed Mrs. Picardy's claims pending final resolution of all of Mr. Picardy's claims by arbitration.

In the action brought by Erin, Defendants moved to stay the proceedings until Mr. Picardy's claims were resolved through arbitration. Defendants' motion was based on their argument that Erin's claims were derivative of Mr. Picardy's claims. The Circuit Court granted Defendants' motion. On April 15, 2009, the Circuit Court filed its Order Staying Proceedings, which stayed Erin's claims pending final resolution by arbitration of Mr. Picardy's claims.

II.

We resolve the issues raised on appeal by Mr. and Mrs. Picardy as follows:

A.

Mr. and Mrs. Picardy argue that the Arbitration Agreement is unconscionable because: (1) its forum selection provision, which requires the arbitration to be conducted by an arbitrator in Nevada and Nevada law to govern the employment relationship, is unfair; (2) the provision that "[e]ach party shall bear its own fees, costs and expenses in the arbitration" is unfair; and (3) it lacks mutuality. Mr. and Mrs. Picardy contend that the Circuit Court erred in failing to determine that the Arbitration Agreement was an unenforceable contract of adhesion. We disagree.

The Hawaiʻi Supreme Court has stated that "the proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation." Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 232 n.7, 921 P.2d 146, 152 n.7 (1996) (internal quotation marks and citation omitted). Under Hawaiʻi law,

> a contract that is "adhesive" -- in the sense that it is drafted or otherwise proffered by the stronger of the contracting parties on a "take it or leave it" basis -- is unenforceable if two conditions are present: (1) the contract is the result of coercive bargaining between parties of unequal bargaining strength; and (2) the contract unfairly limits the obligations and liabilities of, or otherwise unfairly advantages, the stronger party.

Id. at 247, 921 P.2d at 167. Generally, the party challenging a contract provision as unconscionable bears the burden of proving that the provision is unconscionable. E.g., Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999); Rogers v. Royal Caribbean Cruise Line, 547 F.3d 1148, 1158 (9th Cir. 2008); Faber v. Menard, Inc., 367 F.3d 1048, 1053 (8th Cir. 2004).

Mr. and Mrs. Picardy argue that the Arbitration Agreement's forum selection and costs provisions unfairly advantages SRM by requiring them to arbitrate the dispute in

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Nevada, "a remote and inconvenient forum," and by imposing costs that would make arbitration unduly expensive. We conclude that these arguments are without merit.

Prior to filing suit in Hawai'i, Mr. Picardy flew with Erin to Kansas City to have Erin take a test and look for possible housing. Mr. Picardy grew up in the Kansas City area and had family there. Mr. Picardy eventually bought a house and relocated to Kansas. Therefore, Nevada is not a "remote and inconvenient forum," but is closer and more easily accessible to Mr. Picardy and his family than Hawai'i.

With respect to the costs of arbitration, the supreme court in Brown rejected the argument that arbitration is inherently unfair to employees because of "the allegedly greater costs of arbitration as compared to litigation[.]" Brown, 82 Hawai'i at 246 n.23, 921 P.2d at 166 n.23. In addition, in this case, the Arbitration Agreement states that arbitration shall be conducted pursuant to the Employment Arbitration Rules of the American Arbitration Association (AAA). It appears that under these rules, SRM is required to pay all of the AAA administrative fees, hearing fees, hearing room rental fees, and the arbitrator's compensation. Furthermore, as the Circuit Court found, "SRM has further expressly agreed to pay all such fees plus AAA's deposit and filing fees," an agreement which we hold is binding on SRM. Under these circumstances, we conclude that Mr. and Mrs. Picardy have failed to show that the forum selection and cost provisions of the Arbitration Agreement unfairly advantages SRM or are unconscionable.

Mr. and Mrs. Picardy argue that the Arbitration Agreement is unconscionable because it lacks mutuality. The Arbitration Agreement excludes claims for equitable or injunctive relief based on a breach of the Employee Proprietary Information and Inventions Agreement. Mr. and Mrs. Picardy contend that although this exclusion authorizes both parties to bring such claims in court, it renders the Arbitration Agreement non-mutual because only SRM would pursue the excluded claims.

Defendants assert that Mr. and Mrs. Picardy did not argue in the Circuit Court that the Arbitration Agreement lacked mutuality based on the excluded claims, and therefore, Mr. and Mrs. Picardy waived this argument. We agree. Our review of the record reveals that Mr. and Mrs. Picardy did not argue in the Circuit Court that the Arbitration Agreement lacked mutuality based on the excluded claims. Accordingly, we conclude that this argument was waived. See State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) (concluding that an argument not raised at trial was deemed to have been waived); State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases."). In any event, even if we were to consider Mr. and Mrs. Picardy's argument on the merits, we conclude that they have not met their burden of showing that the excluded claims render the Arbitration Agreement unconscionable.

B.

We reject Mr. and Mrs. Picardy's contention that the Arbitration Agreement violates public policy in Hawaiʻi by requiring a dispute regarding employment in Hawaiʻi to be arbitrated with reference to Nevada law. The Hawaiʻi Supreme Court has upheld the validity of choice-of-law provisions in contracts. See Airgo, Inc. v. Horizon Cargo Transport, Inc., 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983). In Airgo, the supreme court stated:

> One of the prime objectives of contract law is to protect the justified expectations of the parties. When the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied.

Id.

Here, we conclude that there is a sufficient nexus with Nevada to justify the choice-of-law provision in the Arbitration Agreement. Among other things, SRM is headquartered in Nevada;

7

the majority of its employees are located in Nevada; Mr. Picardy interviewed for the job in Nevada; and Christian and Coombs, named as defendants by Mr. and Mrs. Picardy, reside in Nevada.

In addition, Mr. and Mrs. Picardy do not explain how the application of Nevada law would differ from Hawai'i law, much less show that the application of Nevada law would diminish their ability to obtain relief. Thus, Mr. and Mrs. Picardy have not met their burden of showing that the Arbitration Agreement's choice-of-law provision violates Hawai'i public policy.

C.

Mr. and Mrs. Picardy contend that the Arbitration Agreement does not encompass Mr. Picardy's claim of fraudulent inducement. We disagree.

The Arbitration Agreement encompasses "any dispute, demand, claim, or controversy . . . which arises from the employment relationship between [Mr. Picardy] and [SRM] or the termination thereof." The term "arise" means "[t]o originate; to stem (from)." Black's Law Dictionary 122 (9th ed. 2009). The premise of Mr. Picardy's fraudulent inducement claim is that Defendants fraudulently induced him to work for SRM by allegedly knowingly or recklessly falsely misrepresenting that the position would be long-term.[6] This claim stems from and requires evaluation of Defendants' intentions concerning the employment relationship. In addition, absent Mr. Picardy's acceptance of the employment offer and his subsequent termination, he would not have suffered damages on his claim. We conclude that Mr. Picardy's fraudulent inducement claim arises from the employment relationship between himself and SRM and therefore was covered by the Arbitration Agreement.

D.

Mr. and Mrs. Picardy argue that Mr. Picardy was induced to sign the Arbitration Agreement by fraud. This argument is

_____

[6] As noted in footnote 1, supra, Mr. and Mrs. Picardy added Coombs as a defendant in their first amended complaint. The reference to "Defendants" in this section II. C. and in section II. D., includes Coombs.

8

without merit. Mr. and Mrs. Picardy's complaint and first amended complaint do not contain any allegation that would support a claim that Defendants misrepresented the terms of the Arbitration Agreement or that Mr. Picardy was misled concerning the nature or effect of the Arbitration Agreement. Mr. Picardy was clearly advised that his signing of the Arbitration Agreement was a condition of SRM's job offer. He was also advised by SRM to review the Arbitration Agreement carefully and was encouraged to discuss it with his legal counsel. The Circuit Court found that the misrepresentations alleged by Mr. Picardy that formed the basis of his fraudulent inducement claim pertained to his acceptance of employment with SRM in general, and were not directed at the Arbitration Agreement. We agree with the Circuit Court's assessment. We conclude that Mr. Picardy was not induced to sign the Arbitration Agreement by fraud.

III.

Erin argues that her claims were not derivative of the claims of her father and therefore the Circuit Court erred in granting Defendants' Motion to Stay. We disagree.

The allegations in Erin's complaint closely track the allegations in her parents' original complaint and first amended complaint. Erin's complaint and her parents' original complaint name the same defendants. Erin claims that SRM made misrepresentations to her father, which her father then conveyed to her. Erin does not claim that Defendants made any misrepresentations to her directly. We conclude that Erin's claims are derivative of her father's claims and that the Circuit Court did not err in staying her case pending resolution of the arbitration of her father's claims. See Brown, 82 Hawai'i at 243, 921 P.2d at 163 (staying wife's claims for negligent infliction of emotional distress and loss of consortium as derivative of husband's claims that were subject to arbitration because the viability of wife's claims was conditioned upon the employer's liability to husband).

IV.

We affirm the Circuit Court's Order Staying Proceedings and Compelling Arbitration in Civil No. 09-1-0290 and its Order Staying Proceedings in Civil No. 09-1-0330.

DATED: Honolulu, Hawai'i, February 22, 2013.

On the briefs:

John F. Perkin
Brandee J.K. Faria
Richard E. Wilson
(Perkin & Faria)
for Plaintiff-Appellant
JOHN PICARDY and ELLEN PICARDY
ERIN PICARDY

Kelly G. LaPorte
David F.E. Banks
Amanda M. Jones
(Cades Schutte LLP)
for Defendants-Appellees

Chief Judge

Associate Judge

Associate Judge

10